UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PETRA CHRISTINA BETER,

                    Plaintiff,

        -against-

DUANE BAUGHMAN,

                    Defendant.

24-CV-0079 (GHW) (RFT)

**REPORT AND RECOMMENDATION**

**TO THE HONORABLE GREGORY H. WOODS, UNITED STATES DISTRICT JUDGE:**

        Plaintiff began this action on November 20, 2023 against Defendants Duane Baughman

("Baughman"), Edward Skyler ("Skyler"), and Douglas Schoen ("Schoen"), alleging, among other

claims, intentional infliction of emotional distress ("IIED"), negligent infliction of emotional

distress ("NIED"), assault and battery, discrimination, and violation of the Gender-Motivated

Violence Protection Law ("GMVPL") and the Adult Survivors Act ("ASA"), as revived by the ASA.

(*See* ECF 1-1, Compl. ¶ 2.) The claims arise out of an alleged sexual assault of Plaintiff by

Baughman in September of 2001; Baughman, who allegedly was Michael Bloomberg's top

mayoral campaign strategist, had arranged for Plaintiff to photograph Bloomberg for the

campaign and allegedly assaulted her before a photo shoot. The claims against Skyler were

dismissed for failure to timely serve him. (*See* ECF 56, Order.) The claims against Schoen were

dismissed for failure to state a claim. (*See* ECF 60, Order.) Pending before the Court is

Baughman's fully briefed motion to dismiss the Amended Complaint ("AC"). (*See* ECF 58, Mot.

To Dismiss; ECF 59, Def.'s Mem.; ECF 61, Pl.'s Opp.; ECF 63, Def.'s Reply.) Having carefully

reviewed the parties' submissions, I respectfully recommend, for the reasons set forth below,

that Baughman's motion to dismiss be GRANTED in part and DENIED in part.

## FACTUAL BACKGROUND

For purposes of the pending motion to dismiss, the Court must accept Plaintiff's well-pleaded allegations as true and draw all reasonable inferences in her favor. *See City of Providence v. BATS Glob. Mkts., Inc.*, 878 F.3d 36, 50 (2d Cir. 2017). Plaintiff's allegations are summarized below.

Schoen introduced Plaintiff to Baughman "for photography purposes." (ECF 54, AC ¶ 11.) Plaintiff was scheduled to meet with Skyler and Baughman to discuss a potential employment opportunity around September 11, 2001, but the meeting was postponed. (*See id.* ¶¶ 12-13.) Schoen later contacted Plaintiff to let her know "someone would be reaching out to her regarding the potential employment opportunity photographing Bloomberg for the last two (2) months of his campaign." (*Id.* ¶ 14.) Baughman then called Plaintiff to ask her to come to Bloomberg's campaign headquarters for a photoshoot. (*See id.* ¶ 15.) Plaintiff told Baughman that she was "too traumatized to work and that the campaign should hire a different photographer." (*Id.*) Baughman continued to call Plaintiff over the next few days and, on September 14, 2001, he picked Plaintiff up in a car to bring her to Bloomberg's campaign offices. (*See id.* ¶¶ 16, 18-20.)

From the campaign offices, Plaintiff and Baughman took a campaign security van to the campaign headquarters. (*See id.* ¶ 22.) During that ride, Baughman "sat next to Plaintiff, pressing himself against her so much so that Plaintiff was pressed up against the van window" and then "began touching Plaintiff saying, 'I'll take care of you.'" (*Id.* ¶¶ 22-23.) Plaintiff "attempted to wriggle away"; Baughman stopped touching her when she declined his request to have dinner with him and stay at the Essex House. (*See id.*)

When Plaintiff and Baughman arrived at Bloomberg's campaign headquarters, she was escorted to a room with worktables and a kitchen. (*Id.* ¶ 25.) Plaintiff bent down to look for a Coke in the refrigerator, and Baughman "suddenly came behind Plaintiff, grabbed Plaintiff's head and pushed his crotch into the right side of her face." (*Id.* ¶ 26.) Baughman pushed Plaintiff's head toward him "like he wanted her to perform oral sex and said, 'You want it'" and then pushed her to the floor and got on top of her. (*Id.*) She began to scream, and Baughman "got off of her." (*Id.*) Skyler ran into the room and saw Baughman standing over her. (*See id.*) Skyler said to Plaintiff, "Let's go get some coffee." (*Id.*) She got up, and she and Skyler left the building and went to a deli across the street. (*Id.* ¶¶26-27.) She and Skyler sat on a bench for about five minutes until Skyler told her that they should return, since Bloomberg could be waiting for them. (*See id.* ¶ 27.) They returned to the campaign headquarters, and Baughman told them they needed to go to Bloomberg's offices. (*See id.* ¶ 28.)

Baughman brought Plaintiff and Skyler to Bloomberg's offices, where she photographed Bloomberg and then left to return home. (*See id.* ¶¶ 29-33.)

## PROCEDURAL HISTORY

Plaintiff began this action on November 20, 2023, by filing a summons and complaint in in New York Supreme Court, New York County, against Baughman, Skyler, and Schoen, alleging, among other claims, IIED, NIED, assault and battery, discrimination, and violation of the GMVPL and the ASA, as revived by the ASA. (*See* ECF 1-1, Compl.) On January 5, 2024, Baughman filed a notice of removal to this Court based on diversity jurisdiction. (*See* ECF 1, Not. of Removal.) On January 8, 2024, Your Honor referred this matter to me for General Pretrial Supervision and Dispositive Motions. (*See* ECF 3.) On February 2, 2024, Plaintiff filed a timely motion to remand

to state court. (*See* ECF 12, Mot. To Remand.) I recommended that Plaintiff's motion to remand to state court be denied, provided that, by March 20, 2024, Baughman filed an amended petition for removal that corrected technical flaws in the original petition. (*See* ECF 22, Report & Recommendation.)  Your Honor adopted the report and recommendation. (*See* ECF 24, Order.)

On March 29, 2024, the Court entered an order directing Baughman to file his response to the Complaint by April 15, 2024. (*See* ECF 27, Order.) On April 15, 2024, Baughman filed a motion to dismiss the Complaint (the "Original Motion"). (*See* ECF 35, Original Mot. To Dismiss; ECF 36, Def.'s Mem.) In the Original Motion, Baughman argued that Plaintiff (1) failed to allege that her claims are revived under the ASA because she did not allege that Baughman's conduct constituted a specific sexual offense revived by the statute and (2) failed to allege facts satisfying all elements of her claims under the GMVPL, for NIED, and for discrimination and retaliation under New York's human rights laws. (*See generally* ECF 36, Def.'s Mem.)

On April 22, 2024, I recommended dismissal of the Complaint against Skyler for failure to timely serve (*see* ECF 47, Report & Recommendation); on May 6, 2024, I recommended dismissal of the Complaint against Schoen for failure to state a claim for many of the same reasons that I recommended that he be considered a nominal defendant in connection with the motion to remand, which recommendation to deny remand was adopted by the Court (*see* ECF 24, Order). (*See* ECF 53, Report & Recommendation). The Court adopted both reports and recommendations. (*See* ECF 56, Order; ECF 60, Order.)

On May 6, 2024, Plaintiff filed the AC (ECF 54). The AC omits Skyler and Schoen as defendants but asserts the same eleven causes of action against Baughman as the Complaint.

(*Compare* ECF 54, AC ¶¶ 42-90 *with* ECF 1-1, Compl. ¶¶ 41-89.) The allegations in the AC are very similar to those in the original Complaint, except that Plaintiff adds additional details about the portion of the photoshoot she alleges took place at Bloomberg's offices on September 14, 2001 and attaches pictures allegedly taken at that photoshoot. (*Compare* ECF 54, AC ¶¶ 20-22 & Ex. A *with* ECF 1-1, Compl. ¶¶ 22-23.) Plaintiff's allegations concerning the alleged assault remain the same. (*Compare* ECF 54, AC ¶¶ 23-26 *with* ECF 1-1, Compl. ¶¶ 24-27.)

Baughman moved to dismiss the AC on May 20, 2024 (*see* ECF 58, Mot. To Dismiss), and the motion was fully briefed by July 3, 2024. (*See* ECF 59, Def.'s Mem.; ECF 61, Pl.'s Opp.; ECF 63, Def.'s Reply.) Baughman argues that Plaintiff (1) fails adequately to allege that her claims are revived by the ASA and (2) fails adequately to allege the elements of her claims for NIED, violation of the GMVPL, and discrimination and retaliation under the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL"). (*See* ECF 59, Def.'s Mem. at 6.)

## LEGAL FRAMEWORK ON A MOTION TO DISMISS

Judgment on a Rule 12(b) motion for "failure to state a claim upon which relief can be granted" is appropriate when the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. In deciding a Rule 12(b)(6) motion for failure to state a claim, the Court "must accept as true all of the allegations contained in a complaint[,]" but "[t]hreadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (internal quotation marks and citation omitted).

**DISCUSSION**

Defendant seeks dismissal of the AC pursuant to Rule 12(b)(6) on the grounds that: (1) Plaintiff's claims were not revived by the ASA and therefore are untimely and (2) Plaintiff fails adequately to plead most of her claims. I set out below the law relevant to each of the challenged causes of action and discuss the adequacy of her factual allegations.

**I.    Plaintiff Adequately Pleads that Her Claims Are Revived by the ASA**

All of Plaintiff's claims against Baughman would be time barred,[1] unless they were revived by the ASA, which revives, for a window of time, certain otherwise time-barred claims, as described below.

The ASA applies to "every civil claim or cause of action brought against any party alleging intentional or negligent acts or omissions by a person for physical, psychological, or

---

[1]    The events underlying the AC occurred over two decades ago, and the statutes of limitations of the claims advanced by Plaintiff range from one year to seven years. *See Tchatat v. City of New York*, No. 14-CV-2385 (LGS), 2015 WL 5091197, at *13 (S.D.N.Y. Aug. 28, 2015) ("Under New York law, actions for intentional torts – including assault, battery, [intentional infliction of emotional distress] and abuse of process – are subject to a one-year limitations period."); *AB ex rel. EF v. Rhinebeck Cent. Sch. Dist.*, 361 F. Supp. 2d 312, 317 (S.D.N.Y. 2005) ("A claim for negligent infliction of emotional distress is subject to a three-year statute of limitations."); N.Y.C. Admin. Code § 10-1105(a) (providing seven-year limitations period for claims under the GMVPL); *Kornmann v. City of New York Bus. Integrity Comm'n*, 467 F. Supp. 3d 54, 61 (E.D.N.Y. 2020) (three-year limitations period for discrimination and retaliation claims under the NYSHRL and the NYCHRL).

other injury or condition suffered as a result of conduct which would constitute a sexual

offense as defined in article one hundred thirty of the penal law committed against such person

who was eighteen years of age or older." N.Y. C.P.L.R. § 214-j. The AC states: "BAUGHMAN's

sexual assault of Plaintiff described in paragraph 26 above constitutes a sexual offense as

defined in article one hundred thirty of the penal law." (ECF 54, AC ¶ 40.)

Baughman argues that "[w]hile Plaintiff makes the conclusory assertion that Mr.

Baughman's alleged conduct" constitutes a qualifying sexual offense, "she *still* fails to allege

which *specific* sexual offense defined by the applicable penal law she is invoking or that Mr.

Baughman's alleged conduct satisfies the requisite elements of that offense." (ECF 59, Def.'s

Mem. at 9 (emphasis in original).)

Plaintiff counters that she has sufficiently identified Baughman's conduct by stating that

he pushed her head into his crotch, causing her to feel his penis near her mouth, and climbed

on top of her after pushing her to the floor; she asserts that Baughman cites no support for his

position that she must identify in the AC the specific subdivisions of article one hundred thirty

of the penal law that were violated by Baughman. (See ECF 61, Pl.'s Opp. at 4-5.) Plaintiff then

specifies several types of sexual offenses that would cover Baughman's alleged behavior,

including section 130.65 ("sexual contact . . . by forcible compulsion"), section 130.20 ("oral

sexual contact . . . with another person without such person's consent"), and 130.52 ("forcibly

touch[ing] the sexual or other intimate parts of another person"). (*See id.*)

Baughman responds that the Court should not consider the sexual offenses identified in

Plaintiff's Opposition and that Plaintiff's "failure to plead this prerequisite to invoking the ASA

in her Amended Complaint should be fatal to her claims." (ECF 63, Def.'s Reply at 2.) In support,

Baughman cites cases holding that courts should not consider on a motion to dismiss new facts raised for the first time in the plaintiff's opposition papers. (*See id.*) Baughman goes on to explain why he believes that the cited sexual offenses are inapposite. (*See id.*)

Baughman's arguments that Plaintiff has failed adequately to plead that Baughman committed a qualifying sexual offense are unpersuasive. First, he cites no cases for the proposition that to successfully invoke the ASA, a plaintiff must cite in her complaint to a specific provision of the penal code, and I have been unable to locate any such authority. Second, while it is true that in reviewing a motion to dismiss, a court should not consider new facts alleged for the first time in the plaintiff's opposition papers, Plaintiff here alleges no new facts. Instead, she appropriately makes legal arguments about why the behavior alleged in the AC qualifies as a sexual offense for purposes of the ASA. Third, Baughman's explanation for why his alleged behavior would not qualify as a sexual offense takes an overly restrictive view of the offenses set forth in article one hundred thirty of the penal law.

Baughman's behavior as alleged in the AC would constitute an offense under the relevant penal law. I believe the alleged conduct would constitute forcible touching under section 130.52, which involves "forcibly touch[ing] the sexual or other intimate parts of another person." N.Y. Penal L. § 130.52(1). Baughman argues that Plaintiff accuses him of touching her face near her mouth, which is not an "intimate part[ ]" of her body. (ECF 59, Def.'s Mem. at 10.) However, New York courts have in the past found that people's feet and neck constitute "intimate parts" of the body. *Morrison v. Scotia Cap. (USA) Inc.*, No. 21-CV-1859 (SHS), 2023 WL 8307930, at *3 (S.D.N.Y. Dec. 1, 2023). I see no reason why the face near the mouth would not also be considered an intimate part of the body.

Even if the face near the mouth is not an intimate part of a person, Baughman's alleged conduct would qualify as sexual abuse in the first degree, which occurs when a person "subjects another person to sexual contact . . . by forcible compulsion." N.Y. Penal L. § 130.65(1). Sexual contact is defined as "any touching of the sexual or other intimate parts of a person . . . for the purpose of gratifying sexual desire of either party." *Id.* § 130.00(3). As the New York Court of Appeals has explained of section 130.65:

> On its face, it is broad enough to encompass sexual touching of the victim by the defendant or touching of the defendant by the victim under compulsion by the defendant. In either instance, the defendant would be *subjecting* another person to sexual contact. Thus, by provision of section 130.65, the defendant is made criminally liable, not if he touches another, but if he "*subjects* another person to sexual contact." Such subjection would occur if the defendant himself touched the other person, if he caused the other person to touch him, or if he caused the other person to touch a third person.

*People v. Ditta*, 52 N.Y.2d 657, 660-61 (1981) (emphasis in original) (rejecting the defendant's arguments that "a person is not guilty of that crime [sexual abuse in the first degree in violation of section 130.65] unless he or she touches the sexual or intimate parts of another person" and that "[f]orcing the other person to touch the defendant's sexual parts does not amount to sexual abuse"); *see also People v. Belfrom*, 475 N.Y.S.2d 978, 980 (N.Y. Sup. Ct., Queens Cnty. 1984) (holding that forcibly compelling the victim "to play with and manipulate defendant's navel constitutes Sexual Abuse in the first degree"). The alleged conduct by Baughman – pushing his crotch into Plaintiff's face – would have caused Plaintiff to touch him in a sexual manner, and so the behavior would constitute sexual abuse in the first degree in violation of section 130.65.

Baughman goes on to argue that, even if Plaintiff has adequately alleged the type of conduct sufficient to trigger the ASA, many of her claims would not be revived by that statute.

(*See* ECF 59, Def.'s Mem. at 11.) Baughman points out that the ASA revives only those claims arising out of "'conduct which would constitute a sexual offense' under the penal code;" he contends that Plaintiff's "[d]iscrimination and retaliation claims do not obviously fit the bill," because those claims are "based on conduct separate and apart from any conduct that could arguably constitute a sexual offense" – "distinct conduct that followed an alleged assault." (*Id.* at 11-12 (emphasis omitted).)

To begin with, I read the AC as alleging that the alleged sexual assault created a hostile work environment that would qualify as discrimination under the NYSHRL and the NYCHRL. As such, the predicate behavior is not distinct conduct that followed the alleged assault and would satisfy the requirements of the ASA. Moreover, at least one court has held that the ASA revives NYCHRL discrimination claims. *See Crawford v. Ratner*, No. 952052/2023, 2023 WL 8810507, at *4-5 (N.Y. Sup. Ct., N.Y. Cnty. Dec. 20, 2023). And Courts in this Circuit have found that claims under the NYSHRL and NYCHRL for discrimination and retaliation were revived by the New York's Child Victims Act ("CVA"), which has substantially similar language to the ASA. *See, e.g.*, *Doe v. New York City Dep't of Educ.*, 669 F. Supp. 3d 160, 166 (E.D.N.Y. 2023) (holding that "the appropriate CVA revival test is whether the civil claim *arises* from sexual misconduct criminalized under Penal Code § 130" and that "[j]ust as the civil claim of battery is not necessarily the crime of rape, gender discrimination itself is not a violation of the penal law and does not necessarily involve sexual abuse; here, however the NYSHRL and NYCHRL discrimination claims *do* arise from 'conduct which would constitute a sexual offense' and are thus revived by the CVA" (emphasis in original)); *Segal v. New York Mil. Acad.*, No. 21-CV-6872(VB), 2023 WL 5211220, at *6 (S.D.N.Y. Aug. 14, 2023) ("Defendants cite no authority

supporting their argument that state-law discrimination and retaliation claims were not revived by the CVA solely because they are discrimination and retaliation claims, and the Court cannot independently locate any."); *cf. Coe v. Regan*, No. 19-CV-05237 (ENV) (VMS), 2022 WL 467053, at *5 (E.D.N.Y. Feb. 3, 2022) ("assuming without deciding that CVA . . . applies to gender discrimination claims").

For the foregoing reasons, I respectfully recommend that Defendant's motion to dismiss Plaintiff's claims as untimely on the ground that they are not revived by the ASA be denied.

## II.    Plaintiff Adequately Pleads a Claim Under the GMVPL

The GMVPL creates a private civil right of action allowing "any person claiming to be injured by an individual who commits a crime of violence motivated by gender" to seek relief. N.Y.C. Admin. Code § 10-1104. The statute defines "crime of violence motivated by gender" as an act "that would constitute a misdemeanor or felony against the person . . . [and] presents a serious risk of physical injury to another" that was "committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender." *Id.* § 10-1103. To plead a violation of the GMVPL, a plaintiff must allege that "(1) the alleged act constitutes a misdemeanor or felony against the plaintiff; (2) presenting a serious risk of physical injury; (3) that was perpetrated because of plaintiff's gender; (4) in part because of animus against plaintiff's gender." *Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 455 (S.D.N.Y. 2018). The animus element typically requires the plaintiff to make allegations that the defendant "expressed hatred toward women as a group" or to allege "actions and statements by the perpetrator during the commission of the alleged crime of violence" reflecting gender-based animus. *Breest v. Haggis*, 180 A.D.3d 83, 92-93 (1st Dep't 2019).

Baughman argues that Plaintiff has not adequately alleged gender-based animus. (*See* ECF 59, Def.'s Memo. at 14.) Plaintiff responds that allegations of sexual assault are in and of themselves sufficient to plead the requisite animus. (*See* ECF 61, Pl.'s Opp. at 7.) In support, Plaintiff quotes from *Breest*: "Coerced sexual activity is dehumanizing and fear-inducing. Malice or ill will based on gender is apparent from the alleged commission of the act itself. Animus inheres where consent is absent." (*Id.* (quoting *Breest,* 180 A.D.3d at 115).) Plaintiff adds that Baughman's alleged comment that she "want[ed] it" as he pushed her down and climbed on top of her is comparable to calling a woman a bitch or a whore while grabbing her throat, which this Court held was sufficient to demonstrate gender-based animus. (ECF 61, Pl.'s Opp. at 8 (citing *Roelcke v. Zip Aviation, LLC*, No. 15-CV-6284 (DAB), 2018 WL 1792374, at *13 (S.D.N.Y. Mar. 26, 2018)).)

Baughman points out that *Rossbach v. Montefiore Med. Ctr.* addressed whether the animus element of a GMVPL claim may be inferred from a sexual offense without more. (*See* ECF 63, Def.'s Reply at 6-7 (citing *Rossbach,* No. 19-CV-5758 (DLC), 2021 WL 930710, at *11 (S.D.N.Y. Mar. 11, 2021)).) In *Rossbach,* where the plaintiff alleged that the defendant had rubbed her shoulders, tried to force her to sit on his lap, and groped her, the Court rejected the plaintiff's assertion that gender-based animus could be inferred from a sexual assault that was not a rape. *See Rossbach,* 2021 WL 930710, at *11 (noting that the plaintiff had not identified any "authority indicating that the requisite animus element may be inferred in GMVPL cases not premised on rape").

Plaintiff argues that *Rossbach* is distinguishable because it was decided on summary judgment. (*See* ECF 61, Pl.'s Opp. at 7.) However, Baughman is correct that the logic of

*Rossbach* applies with equal force at the pleading stage. (*See* ECF 63, Def.'s Reply at 7.)
Nevertheless, I do not believe that *Rossbach* forecloses the possibility that a plaintiff may
adequately plead a claim for violation of the GMVPL in cases involving sexual assaults short of
rape.

The language from *Breest* that precedes the language quoted by Plaintiff is instructive in
analyzing whether Plaintiff's allegations support an inference of gender-based animus:
"Without consent, sexual acts *such as those alleged in the complaint* are a violation of the
victim's bodily autonomy and an expression of the perpetrator's contempt for that autonomy."
*Breest*, 180 A.D.3d at 94 (emphasis supplied). The sexual acts alleged in the complaint in *Breest*
included forced oral sex, digital penetration, and rape. *See id.* at 86. Also instructive is the
discussion in *Jugmohan v. Zola* in the context of the Violence Against Women Act of how courts
consider, among other factors, the perpetrator's language and the severity of the attack. *See
Jugmohan,* No. 98-CV-1509 (DAB), 2000 WL 222186, at *3-4 (S.D.N.Y. Feb. 25, 2000) (finding
that the plaintiff had adequately pleaded the gender-related animus prong of a claim under the
Violence Against Women Act where she alleged that the defendant had approached her even
though she was a total stranger, used sexual language to comment on her figure, and fondled
her breasts, buttocks, and stomach despite her attempts to escape).

The severity of the conduct described in the AC falls between the behavior at issue in
*Rossbach* and in *Breest.* Unlike the defendant in *Rossbach,* Defendant here allegedly used
language during the attack that, while not as clearly disrespectful of women as calling someone
a bitch or a whore, nevertheless suggests a disdain for women: he insisted that Plaintiff
"want[ed] it" despite her protests to the contrary. (ECF 54, AC ¶ 26.) I believe that Baughman's

alleged assault, which involved pushing his crotch into Plaintiff's face and pushing her down and climbing on top of her, combined with his alleged insistence that she "want[ed] it," are sufficient to plead gender-based animus. Baughman does not appear to challenge any of the other prongs of the GMVPL claim, and so I respectfully recommend that Baughman's motion to dismiss Plaintiff's claim under the GMVPL be denied.

### III.    Plaintiff Fails Adequately To Plead a Claim for NIED Against Baughman

Plaintiff fails adequately to plead a claim against Baughman for NIED. To state a claim for NIED under New York law, a plaintiff must allege "(1) extreme and outrageous conduct, (2) a causal connection between the conduct and the injury, and (3) severe emotional distress." *Truman v. Brown*, 434 F. Supp. 3d 100, 122 (S.D.N.Y. 2020) (internal quotation marks and citation omitted). In addition, a plaintiff must plead "facts making out one of three theories: (1) a bystander theory, (2) a direct duty theory, or (3) a special circumstances theory." *Id.* at 122-23 (internal quotation marks and citation omitted). The bystander theory requires injury from witnessing death or serious injury of a family member, and the special circumstances theory is limited to being negligently informed of one's own terminal illness or the death of a family member. *See id*.

The only theory of NIED that could conceivably apply to Baughman's alleged assault is the "direct duty" theory, which requires a plaintiff to allege "an emotional injury from defendant's breach of a duty which unreasonably endangered her own physical safety." *Id*. at 123 (internal quotation marks and citation omitted). The direct duty "must be specific to the plaintiff, not some amorphous, free-floating duty to society." *Id.* Courts in this Circuit have not hesitated to dismiss NIED claims in the absence of an allegation of that the defendant owed the

plaintiff a direct duty. *See, e.g.*, *Mortise v. U.S.*, 102 F.3d. 693, 696 (2d Cir. 1996) (dismissing

NIED claim because, "while [the defendant] may have had a generalized duty to prevent

unreasonable risks of harm to passers-by, this duty was not specific to [the plaintiff]");

*Wahlstrom v. Metro-North Commuter R.R. Co.*, 89 F. Supp. 2d 506, 531 (S.D.N.Y. 2000)

(dismissing NIED claim because allegations of sexual harassment were insufficient to support

such a claim where the plaintiff failed to allege any special duty owed to her by the defendant,

her employer, other than the duty to obey the law); *Kojak v. Jenkins*, No. 98-CV-4412 (RPP),

1999 WL 244098, at *9 (S.D.N.Y. Apr. 26, 1999) (dismissing claim of NIED where the plaintiff

failed to allege a special duty owed to her by the defendant); *Drankwater v. Miller*, 830 F. Supp.

188, 190 n.5 (S.D.N.Y. 1993) (same).

Plaintiff has not alleged any facts suggesting that Baughman owed her such a duty. She

argues in her opposition to the motion to dismiss that Baughman was her "supervisor" (ECF 61,

Pl.'s Opp. at 9), but the AC contains no such allegation. And *Wahlstrom* teaches that an

employment relationship does not create the type of special duty required for a claim of NIED.

*Wahlstrom*, 89 F. Supp. 2d at 531.

Moreover, New York State law does not favor shoehorning intentional conduct into

claims for negligence. *See id.* at 532 ("This Court is mindful that 'New York Courts have rejected

uniformly such attempts to transmogrify intentional torts into 'negligence.'" (quoting *Schmidt v.

Bishop,* 779 F. Supp. 321, 324-25 (S.D.N.Y.1991))); *see also Wilson v. Diocese of N.Y. of Episcopal

Church,* No. 96-CV-2400 (JGK), 1998 WL 82921, at *6 (S.D.N.Y. Feb. 26, 1998) (citing cases);

Prosser & Keeton, *Prosser and Keeton on the Law of Torts* § 10, at 46 (5th ed. 1984) ("There is,

properly speaking, no such thing as a negligent assault."). Accordingly, I respectfully

recommend that the motion to dismiss the NIED claim against Baughman be granted.

**IV.    Plaintiff Fails Adequately To Plead Claims for Discrimination and Retaliation**

Baughman demonstrates that Plaintiff has no claims against him for discrimination or

retaliation pursuant to the NYSHRL or the NYCHRL, because she has not adequately alleged that

Baughman was her employer. (*See* ECF 59, Def.'s Memo. at 16-17.) Plaintiff alleges that she was

put in contact with Baughman for "photography purposes" (ECF 54, AC ¶ 11); that she was told

that someone would contact her "regarding the potential employment opportunity

photographing Bloomberg" (*id.* ¶ 14); and that she took photographs on one occasion for the

Bloomberg campaign (*see id.* ¶¶ 23-24). These allegations are not sufficient to support a

conclusion that Plaintiff was employed by Baughman, or that she and Baughman were both

employed by the Bloomberg campaign. In her opposition, Plaintiff asserts that she worked as an

independent contractor for Baughman (*see* ECF 61, Pl.'s Opp. at 9), but she never clearly alleges

in the AC that she was an independent contractor.

Even if she had done so, at the relevant time, the NYSHRL and NYCHRL did not cover

claims of discrimination by independent contractors. At the time of the alleged incident, "[a]n

essential element of a claim under the NYSHRL or the NYCHRL [was] the existence of an

'employer-employee relationship.'" *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 80-

81 (S.D.N.Y. 2020). Although these statutes were amended in 2019 and 2020, respectively, to

cover other persons, including independent contractors, neither amendment applies

retroactively. *See Franklin v. Whole Foods Mkt. Grp*., 2022 WL 256460, at *3 n.4 (S.D.N.Y. Jan.

26, 2022). Plaintiff therefore cannot maintain a claim against Baughman under the NYSHRL or

the NYCHRL for actions he may have taken around the time of the alleged sexual assault. *See Weerahandi v. Am. Statistical Case Ass'n*, No. 14-CV-7688 (AT), 2015 WL 5821634, at *8 (S.D.N.Y. Sept. 30, 2015) (dismissing the plaintiff's NYSHRL and NYCHRL claims because the plaintiff "failed to allege the requisite employment relationship between himself and [the defendant]"); *Wang v. Phoenix Satellite Television US, Inc.*, 976 F. Supp. 2d 527, 537 (S.D.N.Y. 2013) (same under the NYCHRL).

Plaintiff responds that the 2019 and 2020 amendments to the NYSHRL and the NYCHRL protect her from Baughman's "retaliatory defamation suit," which he filed against her in 2023. (ECF 61, Pl.'s Opp at 10.) Notably, the AC does not specifically identify the protected activity Plaintiff claims led Baughman to retaliate against her: she merely says that "[f]or 20 years Plaintiff has opposed and objected to the sexual assault and sexual harassment she suffered." (ECF 54, AC ¶ 38.) It is far from clear that Plaintiff has sufficiently alleged any protected activity. *See, e.g., Bonterre v. City of New York*, No. 18-CV-0745 (ER), 2021 WL 4060358, at *6 (S.D.N.Y. Sept. 7, 2021) (concluding that the plaintiff's complaints to "upper management" regarding workplace sexual assault and sexual harassment were too generalized to sufficiently plead protected activity).

Baughman goes on to assert that, even if Plaintiff has alleged protected activity, the 20-plus-year time lag between the alleged sexual assault and the 2023 lawsuit prevents an inference that he brought the defamation suit in retaliation for Plaintiff's protected activity following the alleged attack. (*See* ECF 59, Def.'s Memo. at 19.) He cites numerous cases requiring close temporal proximity between alleged retaliatory behavior and protected activity to support a conclusion that the retaliation was in response to the protected activity. (*See id.*)

Plaintiff counters that she does not rely on an inference of causation but rather on direct

evidence of causation: Baughman's allegations in the defamation suit that Plaintiff falsely

accused him of sexual assault, which she says show that he retaliated (brought the lawsuit)

because of her protected activity (complaining about the alleged sexual assault). (*See* ECF 61,

Pl.'s Opp. at 11.) But as Baughman observes, "Plaintiff fails to offer any authority holding that

an independent contractor can maintain a claim for retaliation based on conduct that occurred

over twenty years after the purported working relationship" (ECF 63, Def.'s Reply at 5), and I

am unaware of any such authority.

For the foregoing reasons, I respectfully recommend that the motion to dismiss

Plaintiff's claims under the NYSHRL and the NYCHRL for employment discrimination and

retaliation and aiding and abetting employment discrimination and retaliation be granted.

### III.    Plaintiff Adequately Pleads a Claim for IIED

Baughman challenges the sufficiency of the pleading of Plaintiff's claim for IIED for the

first time in his reply brief in further support of his motion to dismiss. (*See* ECF 63, Def.'s Reply

at 7-8.) He makes these arguments under the heading "Plaintiff Has Failed To State Any Claim

for Emotional Distress," under which he also discusses Plaintiff's claim for NIED. However, the

claims for IIED and NIED are distinct, with different elements, and Baughman contested only

the NIED claim in his opening brief in support of the motion to dismiss. (*See* ECF 59, Def.'s

Memo. at 14-16.) His failure to address the IIED claim in his opening brief means that he has

waived his arguments in favor of dismissing that claim. *See Pryor v. Jaffe & Asher, LLP*, 992 F.

Supp. 2d 252, 260 (S.D.N.Y. 2014) ("It is well established . . . that a court should not consider

arguments that are raised for the first time in a reply brief.") (internal quotation marks and citation omitted).

Baughman's challenge to the sufficiency of the allegations supporting Plaintiff's IIED claim fails on the merits as well. Baughman notes that, to state a claim for IIED, the conduct alleged must be "extreme and outrageous" – a standard that is "rigorous and difficult to satisfy." (ECF 63, Def.'s Reply at 7-8 (citing cases).) He argues that the allegations in the AC are not sufficiently extreme and outrageous to support a claim of IIED, citing two cases in which the alleged conduct fell short – one in which the defendant, who was the plaintiff's supervisor, called the plaintiff derogatory names and another in which the defendant publicly shouted derogatory remarks and hit the plaintiff with a telephone. (*See id.*) Plaintiff's allegations here – that Baughman shoved his crotch into her face, told Plaintiff that she "want[ed] it," and pushed her to the floor and climbed on top of her – are more extreme and outrageous than the allegations in the cases cited by Baughman. In my view, her allegations are sufficient to support a claim for IIED. "In the rare instances where the New York courts have found the complaint sufficient to state a claim for intentional infliction of emotional distress in the employment context, the claims have been accompanied by allegations of sex discrimination, and more significantly, battery." *Cowan v. City of Mount Vernon*, 95 F. Supp. 3d 624, 656 (S.D.N.Y. 2015) (internal quotation marks and citation omitted) (collecting cases); *Chau v. Donovan*, 357 F. Supp. 3d 276, 287 (S.D.N.Y. 2019) (holding that the plaintiff had sufficiently alleged an IIED

claim where she stated she had experienced "unwanted bodily contact," by the defendant, including inappropriate touching and groping).

## IV.    Leave To Amend

Plaintiff requests leave to amend if Baughman's motion is not denied in its entirety. (*See* ECF 61, Pl.'s Opp. at 12.) However, she does not explain how she would cure the deficiencies in her pleading. A "plaintiff need not be given leave to amend" where, as here, she "fails to specify . . . how amendment would cure the pleading deficiencies in its complaint." *Moniodes v. Autonomy Cap. (Jersey) LP*, No. 20-CV-05648 (GHW), 2021 WL 3605385, at *8 (S.D.N.Y. Aug. 11, 2021). Granting leave to amend would be particularly unwarranted here because most of the deficiencies in Plaintiff's pleading of her claims of NIED and NYSHRL and NYCHRL employment discrimination and retaliation were raised in my report and recommendation on the motion to remand (ECF 22), which Your Honor adopted on March 28, 2024, over a month before Plaintiff filed the AC. (*See* ECF 24.) Plaintiff has already had ample opportunity to address the deficiencies in her pleading.

Moreover, "leave to amend a complaint may be denied when amendment would be futile." *Leneau,* 2018 WL 566456, at *18 (quoting *Tocker v. Philip Morris Cos*., 470 F.3d 481, 491 (2d Cir. 2006) (internal quotation marks omitted)); *see also Moniodes*, 2021 WL 3605385, at *8 (S.D.N.Y. Aug. 11, 2021). I believe that it would be futile to grant Plaintiff leave to amend the AC to address the deficiencies in her claims of NIED and NYSHRL and NYCHRL employment discrimination and retaliation. *See, e.g.*, *Truman v. Brown*, 434 F. Supp. 3d 100, 123-24 (S.D.N.Y. 2020) (denying the plaintiff's request for leave to amend the complaint, including allegations of NIED, where the plaintiff had previously been aware of the deficiencies, had not identified any

proposed amendments to the complaint, and sought leave to amend in a conclusory sentence in the opposition brief); *Malcolm v. Rochester City Sch. Dist.*, 388 F. Supp. 3d 257, 265 (W.D.N.Y. 2019) (denying leave to amend certain employment discrimination claims because doing so would be futile), *aff'd,* 828 F. App'x 810 (2d Cir. 2020).

## CONCLUSION

For the foregoing reasons, I respectfully recommend that Defendant's motion to dismiss be DENIED IN PART and GRANTED IN PART, as follows:

(1) Defendant's motion to dismiss all claims as time barred should be DENIED;

(2) Defendant's motion to dismiss the claim for violation of the GMVPL for failure to state a claim should be DENIED;

(3) Defendant's motion to dismiss the claim of IIED for failure to state a claim should be DENIED;

(4) Defendant's motion to dismiss the claim of NIED for failure to state a claim should be GRANTED with prejudice; and

(5) Defendant's motion to dismiss the claims of employment discrimination and retaliation and aiding and abetting employment discrimination and retaliation under the NYSHRL and the NYCHRL for failure to state a claim should be GRANTED with prejudice.

Accordingly, I respectfully recommend that Plaintiff be allowed to proceed with her claims of IIED, assault and battery,[2] and violation of the GMVPL.

---

[2]    Baughman does not challenge the sufficiency of Plaintiff's pleading of her claim for assault and battery.

Dated: New York, New York
        September 5, 2024

_____
**ROBYN F. TANOFSKY**
**United States Magistrate Judge**


**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO REPORT AND RECOMMENDATION**

The parties shall have fourteen days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure to this Report and Recommendation. A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Woods.

THE FAILURE TO OBJECT WITHIN FOURTEEN DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).