# THE CLANCY LAW FIRM, P.C.

**40 Wall Street, 25th Floor**
**New York, New York 10005**
**(212) 747-1744**

June 25, 2025

**VIA ECF**
The Honorable Robyn F. Tarnofsky
United States District Court for the Southern District of New York
500 Pearl Street, Room 703
New York, New York 10007

    Re:    *Beter v. Baughman,* No. 1:24-cv-00079-GHW-RFT

Dear Judge Tarnofsky:

We represent the Plaintiff Petra Beter in the Adult Survivor's Act ("ASA") action against Defendant Duane Baughman for alleged sexual assault. Pursuant to Your Honor's Individual Rules, § I(D), III(E), and Paragraph 9 of the Confidentiality Agreement and Protective Order (Dkt. 65) ("Protective Order"), Plaintiff submits this letter-motion to respectfully request an Order sealing certain confidential exhibits submitted in support of Plaintiff's application to compel Defendant Baughman to supplement his Discovery Responses pursuant to FRCP 26(b)(1) and 26(e) and for leave to serve third party witness, Melinda Cardwell by alternative means under FRCP 45. A copy of Plaintiff's application is attached hereto as **Exhibit A**.

In support of her application, Plaintiff seeks to file the following exhibits under seal (collectively, **Exhibit B**, filed under seal under separate docket number) which have been designated Confidential by at least one party under the Protective Order: (i) transcript excerpts from Defendant Baughman's June 6, 2025 Douglas Schoen's May 12, 2025 depositions; (ii) Ashley Thompson Statement, produced in discovery, designated confidential; and (iii) Defendant Baughman's Written Discovery Responses, containing confidential information.

Prevailing Second Circuit law—including *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132 (2d Cir. 2016) and *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006), supports the filing of these materials under seal during the discovery phase, as designated confidential under the Protective Order, and because "documents 'such as those passed between the parties in discovery' often play 'no role in the performance of Article III functions' and so the presumption of access to these records is low." *Bernstein*, 814 F.3d at 142 (quoting *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995)). *See also Strauss v. Credit Lyonnais, S.A.*, 2011 U.S. Dist. LEXIS 122694, 2011 WL 4736359, at *3 (E.D.N.Y. Oct. 6, 2011) ("materials obtained in discovery 'are not public components of a civil trial [and] were not open to the public at common law'" and "'restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information'") (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33, 104 S. Ct. 2199, 81 L. Ed. 2d 17 (1984)); *In re Keurig Green Mountain SingleServe Coffee Antitrust Litig.*, 2021 U.S. Dist. LEXIS 29592, 2021 WL 621222, at *6 (S.D.N.Y. Feb. 16, 2021) (granting motions to seal documents related to discovery dispute "in

order to protect any materials that may be privileged"); *Lugosch*, 435 F.3d at 119 ("[T]he mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access") (citation omitted).

For these reasons, Plaintiff respectfully requests that the Court grant the request to seal the exhibits submitted in support of Plaintiff's pre-motion conference letter to compel Defendant Baughman to supplement his Discovery Responses and for leave to serve third party witness, Melinda Cardwell by alternative means. (ECF 211).

Respectfully submitted,

*Donna H. Clancy*
Donna H. Clancy, Esq.

To: All Counsel of Record (via ECF)

Beter's application to file documents under seal is GRANTED. The discovery materials she seeks to seal may be sealed during the discovery phase of this litigation, because documents "'such as those passed between the parties in discovery' often play 'no role in the performance of Article III functions' and so the presumption of access to these records is low." Bernstein v. Bernstein Litowitz Berger & Grossmann LLP, 814 F.3d 132, 142 (2d Cir. 2016) (quoting United States v. Amodeo, 71 F.3d 1044, 1050 (2d Cir. 1995)).

The Clerk of Court is respectfully requested to terminate ECF 212 and to seal the documents at ECF 213 with access to case participants and court staff.

Date: June 26, 2025
New York, NY

SO ORDERED

_____
ROBYN F. TARNOFSKY
UNITED STATES MAGISTRATE JUDGE

2

# EXHIBIT A

# THE CLANCY LAW FIRM, P.C.

**40 Wall Street, 25th Floor**
**New York, New York 10005**
**(212) 747-1744 (t)**
**dhc@dhclancylaw.com**

June 25, 2025

**VIA ECF**
The Honorable Robyn F. Tarnofsky
United States Magistrate Judge
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 703
New York, New York 10007

    Re:    *Beter v. Baughman,* No. 1:24-cv-00079-GHW-RFT

Dear Judge Tarnofsky:

This office represents Plaintiff Petra Beter ("Plaintiff"), in this Adult Survivor's Act ("ASA") action. Pursuant to Your Honor's Individual Rules, § III (B) and Federal Rules of Civil Procedure ("Rules") 26(b)(1) and 26(e), Plaintiff respectfully submits this pre-motion conference letter to compel Defendant Baughman to supplement his Discovery Responses as to witness information and investigative materials responsive to Plaintiff's demands and which are directly relevant to Plaintiff's claims and Defendant's defenses. Pursuant to Rule 45, Plaintiff further seeks leave to serve third party, Melinda Cardwell, a relevant fact witness, recently discovered during Defendant Baughman's June 6 deposition, by alternative means.

During Defendant Baughman's June 6, 2025 deposition, Plaintiff discovered for the first time that Baughman has withheld material witness information for another female complainant, Ms. Ashley Thompson, who he is still in contact with. He also refuses to provide information about another witness, Ms. Cardwell, who was with Ms. Thompson and Mr. Baughman in a New York City hotel when he allegedly assaulted Ms. Thompson. Despite due demand for this information and after meeting and conferring, Baughman refuses to provide contact information for both women and any responsive documents to Plaintiff's prior discovery demands in violation of Rules 26(b)(1) and (e). The withheld discovery is particularly critical to Plaintiff's claims regarding her alleged assault as it bears directly upon Defendant's credibility in both actions.

    **I.**    **Defendant Baughman Must be Compelled to Supplement his Discovery Responses**

Federal Rule of Civil Procedure ("FRCP") 26 provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). Discoverability is determined by the broad standard of relevance. *See Gucci Am., Inc. v. Guess ?, Inc.*, 790 F. Supp. 2d 136, 140 (S.D.N.Y. 2011). The relevance standard "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the

1

case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978).

"Rule 26(e) of the Federal Rules of Civil Procedure imposes a continuing obligation on a party to supplement its discovery responses 'in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.'" *Trilegiant Corp. v Sitel Corp.*, 2012 US Dist LEXIS 72644, at *11-12 ) (SDNY May 22, 2012) (granting Plaintiff's motion to compel Defendant to produce documents responsive to Plaintiff's RFPs) (citing Fed. R Civ. P. 26(e)). "This duty obliges the entity responding to discovery to turn over improperly withheld materials without an additional request from the propounding party." *Id.* (citing *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 156, 2012 U.S. Dist. LEXIS 19208, *22, 2012 WL 500283, at *7 (S.D.N.Y. Feb. 15, 2012) (" [T]he federal discovery rules place a duty on a party to turn over not only proper materials of which he is aware, but also those of which he reasonably ought to have been aware." (internal quotation marks and emphasis omitted)).

### A. The Discovery Sought is Relevant

In his Defamation Action against Ms. Beter, Baughman's Complaint states: "Baughman has never sexually assaulted anyone, nor has he ever been accused of sexual misconduct." (**Exhibit A**). Baughman's Declaration submitted in the Defamation Action similarly affirms: "I have never assaulted Petra or any woman and, other than Petra and her sister, no one has ever accused me of such a heinous act." (**Exhibit B**) (emphasis added). *See also* Defamation Action Memorandum of Law: "Mr. Baughman *never* assaulted, threatened, or harassed Petra, or any woman… Ms. Merrill did not know about and ignore Mr. Baughman's alleged "history of sexual misconduct," because there is none." (**Exhibit C** at 2) (emphasis in original). In Response to Plaintiff's Interrogatory No. 14, which asks whether any prior complaints (formal or informal, written or verbal) have been made against Defendant for sexual harassment, Defendant Baughman responded, "he is not aware of any such prior complaints." (**Exhibit D**).

Baughman's denials are directly contradicted by the record. In discovery, Plaintiff produced a Facebook message she received on June 29, 2012 from an individual by the name of Ashley Thompson. (**Exhibit E**). In this message, Ms. Thompson writes to Ms. Beter that she had "regretfully" been "seeing" Baughman for the last eight months, but that they "broke up last month over a physical altercation in which he grabbled [sic] me and shoved me into the marble lobby walls of the Plaza Hotel in New York City," sustaining a "large bump" to her head and "ached for days following." *Id.* Ms. Thompson further writes that she "called the police," but prior to their arrival, Baughman, and his assistant at the time, "Melinda," convinced Ms. Thompson that she "should lie to the police about it to preserve [Baughman's] public reputation," which she agreed, explaining she was "honestly fearful of [Baughman's] power and money and influence" and was afraid she would not "be able to stand a chance against [Baughman's] power and money in a court of law." *Id.*

In her message to Ms. Beter, Ms. Thompson explained, "[t]he reason I'm deciding to reach out to you is because about 6 months ago, Duane mentioned your case and told me he didn't assault you.

2

I know now firsthand, if he didn't do it to you, well he certainly has the capacity to put his hands on a woman." *Id.* She further writes: "I am deeply disappointed that I lied to the police about [Baughman] hurting me…I became way in over my head and saw [sic] the evil two faces of Mr. Baughman…Thank you for reading this and I hope that you would be willing to help me figure out what I am dealing with here." *Id.*

When Baughman was questioned about Ms. Thompson's statement at his deposition, he admitted he dated a woman by the name of Ashley Thompson on-and-off for a number of years and that Melinda Cardwell "could have been" his assistant at the time of Baughman's 2012 alleged assault of Ms. Thompson, but denied and/or did not recall the remainder of Ms. Thompson's allegations contained in her message to Plaintiff. (**Exhibit F**, Baughman Tr. 57-65, 141-143). Despite having a copy of Ms. Thompson's damning statement, he never asked Ms. Thompson about her allegations of abuse against him, even though he spoke with her just weeks before his deposition. (Baughman Tr. 66-67). Baughman's testimony was the first time Ashley Thompson's existence became real to Plaintiff. Baughman confirmed this himself. Although Baughman admits to being in recent contact with Ms. Thompson over the phone and met her in person, he refuses to provide her contact information for Plaintiff to subpoena her.

Baughman did admit that Kat Parrick accused him of sexual assault and that he understood Ms. Parrick testified that Baughman physically abused her on multiple occasions. (Baughman Tr. 41, 48-49). However, neither Ms. Parrick nor her complaints of assault against Baughman are referenced in his discovery responses in violation of Rules 26(b)(1) and (e). When questioned about Ms. Parrick's October 14, 2024 testimony wherein Ms. Parrick expressed that she was worried for Petra and her sister and the thought that Baughman "was going to do something to silence them," and whether Baughman ever discussed Plaintiff with Ms. Parrick, Baughman admitted: "I mean clearly I did…" (Baughman Tr. 154-155).

Regarding complaints made against Baughman by a female Bloomberg campaign worker, Doug Schoen testified:

> A. I did mention to Mr. Baughman that I received a call from Patti Harris, who told me that Mr. Baughman had asked a Puerto Rican young woman working on the campaign out on a date. And Patti Harris told me she wanted Mr. Baughman to keep his personal life out of the campaign.
>
> Q. Did you ever talk to Mr. Baughman about that?
>
> A. I did.
>
> Q. What did you say to Mr. Baughman and what did he say to you?
>
> A. I said, keep your personal life out of the campaign, Duane. And he said he would. (**Exhibit G**, Schoen Tr. 81:5-21).

When confronted with Mr. Schoen's testimony, Baughman testified "if I met a woman, any woman on that campaign, they never made a complaint against me, that you can prove or anybody else

3

can." (Baughman Tr. 38: 10-13).

Clearly, Baughman's credibility in denying allegations of assault made against him by four different women is called into question.

> Q. So far, Mr. Baughman, you have denied allegations in a lawsuit by Ms. Beter, regarding sexual assault. You deny having any type of physical altercation involving Ms. Thompson and you deny any physical violence towards Ms. Parrick; is that correct?
>
> A. That is absolutely correct, and especially in the cases of your client, who is a criminal, has mental illness in her family, DNA, and Kat Parrick, who is a heroin user, I would say that that's a perfect combination of incredibility.
>
> Q. So did Ms. Thompson also do drugs and lie to you?
>
> A. Not that I know of. (Baughman Tr. 65: 20-66:10).

Within two weeks of Baughman's testimony, on June 19, 2025, Plaintiff sent Defendant a deficiency letter seeking outstanding documents and information relating to: (1) Ashley Thompson; (2) Melinda Cardwell (and attaching two subpoenas for Ms. Cardwell at her two last known addresses) (**Exhibit H**); (3) Defendant Baughman's trip to New York City in May 2012 where it is alleged he assaulted Ms. Thompson; and (4) documents related to Defendant Baughman's admitted hiring of private investigators to investigate Plaintiff and her family. (Baughman Tr. 199-213, 236). (**Exhibit I**, Deficiency Letter).

### B. After an Unsuccessful Meet and Confer, Court Intervention is Required

In her June 19 Deficiency Letter, Plaintiff requested that Defendant search and produce responsive documents by June 26, 2025 and if no longer in existence, submit a certification to that effect in accordance with the FRCP and related case law. Plaintiff further advised that if Defendant had any objection to the demands based on form or substance or otherwise, to please advise by June 20 so the parties can meet and confer as soon as possible.

The next day, on June 20, Defendant requested Plaintiff's consent to adjourn the parties' June 30 court ordered settlement conference. Plaintiff consented and advised Defense regarding Plaintiff's intention to file a letter requesting a conference to address the outstanding Bloomberg Third-Party discovery. The same day, Defendant filed a letter objecting to extending discovery as to Defendant Baughman. At no point prior to his filing did Defendant indicate his intent to do so. Upon receipt of Defendant's filing, Plaintiff emailed Defendant stating:

> "As you know, yesterday Plaintiff served a follow up demand for documents upon Mr. Baughman and served notice(s) of subpoena of a witness that will likely have relevant information to Plaintiff's claims based on information Plaintiff has now discovered and confirmed by Mr. Baughman's testimony. The correspondence specifically asked if you had any objections to the demands and if so, to advise of a time to meet and confer. You have done neither." (**Exhibit J**).

4

Plaintiff further requested Defendant confirm a time on Monday, June 23, to meet and confer so Plaintiff could promptly inform the Court whether a conference would be needed to resolve this discovery issue. Defendant sent Plaintiff a letter objecting[1] to the discovery sought. (**Exhibit K**). During the parties meet and confer on Monday June 23 at 11:00 a.m., Defendant confirmed his refusal to supplement his discovery responses for the reasons addressed in his letter.

Contrary to Defendant's contentions, the documents and information sought in Plaintiff's Deficiency Letter are indeed related to the "dispute in the instant case" and responsive to her prior written discovery demands. Documents and information relating to: (1) Ashley Thompson; (2) Baughman's assistant, Melinda Cardwell; and (3) Defendant Baughman's trip to New York City in May 2012 where it is alleged he assaulted Ms. Thompson are relevant and responsive to Plaintiff's requests for witness information. *See* Ex. **E**, wherein Ms. Thompson specifically advised Plaintiff that Baughman discussed Plaintiff's assault claims against him.

Because at least four women (that we know of) have made similar complaints against Baughman, he must be compelled to supplement his written discovery responses as to: (1) witness information: (2) Interrogatory No. 14 (prior complaints); (3) RFP No. 79, "documentation of police reports, restraining orders, calls to the police, domestic calls regarding complaints by Katherine Parrick about the Defendant"; and (4) RFP No. 80, "communication and documentation with Katherine Parrick about "the other woman" defendant 'got in trouble with as well it wasn't just Petra, another woman in New York on that very same campaign (who) ended up filing a restraining order against him and then she got fired from the campaign.'"(**Exhibit D**, Baughman's Objections and Responses to Plaintiff's First Set of Interrogatories; **Exhibit L**, Baughman's Objections and Responses to Plaintiff's First Set of RFPs). *See Carroll v Trump*, 124 F.4th 140, 170 (2d Cir 2024) ("evidence of other conduct was relevant to show a pattern tending to directly corroborate witness testimony and to confirm that the alleged sexual assault actually occurred.").

*See also O'Rear v. Diaz*, No. 24-cv-1669, 2024 U.S. Dist. LEXIS 208787, at *6-7 (S.D.N.Y. Nov. 13, 2024) (compelling defendant to produce information and documents related to complaints of sexual harassment and sexual assault, particularly, whereas here, a pattern and practice is alleged); *Cox v. McClellan*, 174 F.R.D. 32, 34 (W.D.N.Y. 1997) ("In civil rights actions, courts have permitted discovery of prior similar complaints or incidents regardless of the outcome of those complaints." (emphasis omitted)); *Henry v. Hess*, No. 11 Civ. 2707(KMK)(GAY), 2012 U.S. Dist. LEXIS 147526, 2012 WL 4856486, at *1 (S.D.N.Y. Oct. 12, 2012); *Sowell v. Chappius*, No. 07-CV-6355, 2010 U.S. Dist. LEXIS 31252, 2010 WL 1404004, at *1 (W.D.N.Y. Mar. 31, 2010)).

Similarly, documents related to Baughman's admitted hiring of private investigators to investigate Plaintiff and her family are also relevant and must be produced as related to Plaintiff's claims of the abuse and retaliation she was subjected to following her speaking out about Baughman's

---

[1] Defendant's position regarding the timeliness of Plaintiff's deficiency letter is without merit, as it was sent less than two weeks following Baughman's June 6 deposition and amid Plaintiff's dealing with the Bloomberg-Party discovery issues and preparing for the parties' settlement conference and related submissions. *See Doe v Indyke*, 2024 US Dist LEXIS 211070, at *5-7 (SDNY Nov. 20, 2024, No. 1:24-cv-01204-AS) (granting motion to compel holding, "Courts routinely find that motions to compel are not untimely where, as here, the movant's request relates to a production made on or shortly before the close of discovery and the movant raised the issue with the Court promptly thereafter"). To the extent Defendant claims he should not be compelled to produce the discovery which Plaintiff is entitled because the *Court Reporter* did not indicate same in the transcript is without merit.

alleged assault upon her. The documents sought are also responsive to RFP No. 4: "communications Defendant had with any individuals regarding Plaintiff's whereabouts from 2001 – 2024"; RFP No. 27: "names and records from private investigators hired or working for Defendant"; RFP No. 28: "payments by defendant or defendant's representatives to private investigators"; and RFP No. 30: "communications defendant had with private investigators regarding Ms. Beter, her family or her son." (**Exhibit M**, Baughman's Objections and Responses to Plaintiff's Second Set of RFPs).

Accordingly, Plaintiff respectfully requests Baughman be compelled to supplement his written discovery responses and produce all outstanding responsive documents in accordance with Rules 26(b)(1) and 26(e). *See Vanceah v Natl. R.R. Passenger Corp.*, 2022 US Dist LEXIS 136500, at *24 (SDNY Aug. 1, 2022) ("Under Rule 26(e), Vanceah was required to promptly correct and supplement any insufficient responses to Amtrak's discovery requests when notified by a deficiency letter.").

## II. This Court Should Permit Substitute Service Upon Ms. Cardwell

Based upon Ms. Thompson's statement, Ms. Cardwell may have information relevant to Plaintiff's claims and Defendant's defenses, as a witness to Baughman's alleged assault of Ashley Thompson in 2012. As his employee, she may also have information regarding Baughman's hiring of private investigators to investigate Plaintiff and her family. *See Goolden v Wardak*, 2024 US Dist LEXIS 84818, at *16-17 (SDNY May 8, 2024, No. 19-CV-6257 (ALC) (VF) (This is a case involving an alleged sexual assault, which as Plaintiff rightly argues, will require a jury to weigh Plaintiff's credibility against Defendant's credibility. *See Pavel v. Hollins*, 261 F.3d 210, 221 (2d Cir. 2001) (describing sexual abuse trial as a "'credibility contest,' in which the word of the defendant's alleged victims . . . would be set against the word of the defendant"). Here, the credibility of the parties is a central issue in this case. *See Outley*, 837 F.2d at 590-91 (concluding that court erred in precluding witness testimony due to late disclosure by plaintiff where "credibility was the crucial issue" in case, witness testimony was important, and moving party had not shown either "extreme misconduct" by plaintiff or "extreme prejudice" suffered by defendants).

Plaintiff promptly sought to subpoena Ms. Cardwell at her last two known addresses, one of which property may be owned by Mr. Baughman. (**Exhibit H**). However, Plaintiff's process server was unable to effectuate personal service despite diligent attempts. (**Exhibit N**, Process Server Attempts at Service). As such, Plaintiff respectfully requests leave to serve Ms. Cardwell via substitute service either by phone, text message and/or email, as permitted under Rule 4(e) and 45.

Rule 4(e) dictates that "an individual . . . may be served in a judicial district of the United States by . . . following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e). Courts in this district routinely apply New York law to determine whether alternative means are appropriate to serve an out-of-state resident. *See, e.g., SEC v. Pence*, 322 F.R.D. 450, 454–55 (S.D.N.Y. 2017) (applying C.P.L.R. 308(5) to permit service by certified mail, email, and telephone to a Florida resident); *Charly Acquisitions, Ltd. v. 43 N. Broadway, LLC*, 2024 WL 5244873, at *4–6 (S.D.N.Y. Dec. 30, 2024) (applying New York law to permit service by certified mail and email on California and Pennsylvania residents); *Breuer v. Castaneda*, 2016 WL

11483932, at *1–2 (S.D.N.Y. Apr. 19, 2016) (applying New York law to permit service on Florida resident); *Freeman Giuliani v. Giuliani*, No. 24-CV-06563 (LJL), 2024 WL 5054913, at *2 (S.D.N.Y. Dec. 10, 2024) (impracticability does not require satisfying due diligence, or even showing that actual prior attempts to serve a party under each and every method provided in the statute have been undertaken).

Under Rule 45, this Court may authorize "alternative service that is reasonably designed to ensure that a witness actually receives a subpoena." *See Pence*, 322 F.R.D. at 454 (citations omitted); *see also Cordius Trust v. Kummerfeld*, 2000 WL 10268, at *2 (S.D.N.Y. Jan. 3, 2000). Alternative service is appropriate where it "reasonably insures actual receipt of the subpoena by the witness" and "is reasonably calculated under the circumstances to provide [the witness] with both notice and an opportunity to present objections." *See JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*, 2009 WL 1313259, at *3 (S.D.N.Y. May 11, 2009) (citations omitted); *see also In re Bibox Grp. Holdings Ltd. Secs. Litig.*, 2020 WL 4586819, at *2 (S.D.N.Y. Aug. 10, 2020) ("[I]n order to comply with due process requirements, alternative service must provide notice that is reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action.") (citations and quotations marks omitted).

Based on the foregoing, Ms. Beter respectfully requests that the Court enter an order permitting Ms. Beter to serve Ms. Cardwell by telephone, text message and/or email. Ms. Beter has already confirmed that she has a telephone number and email address for Ms. Cardwell. This district has held that service via telephone and social media are proper "backstop" means of service. *See Pence*, 322 F.R.D. at 455–56 (finding proper means of service by telephone call with voicemail, email, or fax); *Hardin v. Tron Found.*, 2020 WL 5236941, at *2 (S.D.N.Y. Sept. 1, 2020) (authorizing service by email and LinkedIn); F.T.C. v. PCCare247 Inc., 2013 WL 841037, at *4–6 (S.D.N.Y. Mar. 7, 2013) (allowing service via Facebook message in addition to email); In re Terrorist Attacks on Sept. 11, 2001, 2022 WL 1088567, at *5 (S.D.N.Y. Apr. 5, 2022) (authorizing service by publication and Twitter); *In re Bibox Grp. Holdings Ltd. Secs. Litig.*, 2020 WL 4586819, at *2 ("[S]ervice via known social media accounts is permissible."); *Kumar v. Alhunaif*, 2023 WL 8527671, at *5 (S.D.N.Y. Dec. 8, 2023) (allowing service through WhatsApp and Facebook).

Considering the impracticability of serving Ms. Cardwell by personal service, alternative service by telephone, text message and email—the only means Ms. Beter is aware of to reach Ms. Cardwell—is appropriate here. Ms. Cardwell is "likely to receive . . . service through the alternative method[s]" proposed here, which will provide Ms. Cardwell with "timely actual notice" of documents in this litigation. *Freeman*, 2024 WL 5054913, at *2.

Plaintiff respectfully requests that the Court permit Plaintiff to complete this limited discovery during the period in which she completes the Bloomberg Third Parties' discovery.

Thank you for the Court's attention to this matter.

                                    Respectfully submitted,

                                    *Donna H. Clancy*
                                    Donna H. Clancy, Esq.

To: All Counsel of Record (via ECF)